# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

EFFRIN G.,

        Plaintiff,

        v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,

        Defendant.

Case No. CV 17-3714-SP

MEMORANDUM OPINION AND ORDER

## I.
## **INTRODUCTION**

On May 17, 2017, plaintiff Effrin G. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents three disputed issues for decision: (1) whether the Administrative Law Judge ("ALJ") erred at step two; (2) whether the residual

functional capacity ("RFC") determination was supported by substantial evidence; and (3) whether the step five determination was supported by substantial evidence. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1, 15-23; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 1-4.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ's step two finding, RFC determination, and step five finding were not supported by substantial evidence. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions enunciated in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was fifty years old on August 31, 2012, the alleged disability onset date. AR at 99. Plaintiff has a cosmetology certificate and has past relevant work as a nurse aide, barber, and office clerk. *Id*. at 56, 88-89.

On October 3, 2013, plaintiff filed applications for a period of disability, DIB, and SSI, alleging an onset date of August 31, 2012 due to post-traumatic stress disorder ("PTSD"), back pain, a dislocated thumb, knee pain, and eye problems.[1] *Id*. at 99, 108. The Commissioner denied plaintiff's applications initially, after which he filed a request for a hearing. *Id*. at 121-25, 127-28.

Plaintiff, represented by counsel, appeared and testified at hearing before the ALJ on August 27, 2015. *Id*. at 41-98. The ALJ also heard testimony from Dr. John Dusay, a medical expert, and Phillip Sidlow, a vocational expert. *Id*. at 46-52, 87-96. On October 29, 2015, the ALJ denied plaintiff's claims for benefits. *Id*. at 22-36.

---

[1] Plaintiff previously filed applications for SSI and DIB in 2007. AR at 100. Both were denied at the initial level. *Id*.

2

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 31, 2012, the alleged onset date. *Id*. at 24.

At step two, the ALJ first found that through the date last insured, December 31, 2012, plaintiff suffered from the following impairments: sebaceous cyst, hypertension, diabetes mellitus, hyperlipidemia, and depression. *Id*. But the ALJ determined these impairments were not severe because, through the date last insured, these impairments did not significantly limit plaintiff for twelve consecutive months. *Id*. Thus, for purposes of plaintiff's DIB application, the ALJ determined plaintiff was not under a disability between the August 31, 2012 onset date and the date last insured, December 31, 2012. *Id.* at 28.

The ALJ then returned to step two for purposes of plaintiff's SSI application. The ALJ found that from the October 3, 2013 application date onward, plaintiff suffered from the severe impairments of depression, PTSD, adjustment disorder, and cannabis abuse. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.* at 29.

The ALJ then assessed plaintiff's residual functional capacity,[2] and determined he had the RFC to perform a full range of work at all exertional levels, but limited to: simple, routine tasks; frequent contact with supervisors, coworkers, and the public; and simple work-related decisions. *Id*. at 31.

---

[2] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a nurse aide, barber, or office clerk. *Id*. at 34.

At step five, the ALJ found that given plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including hospital cleaner, dishwasher, and dry cleaner helper. *Id*. at 35. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 36.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. Plaintiff Only Presents Issues Concerning the Denial of SSI

In opposing each of plaintiff's claims of error by the ALJ, the crux of defendant's argument is that the medical evidence presented by plaintiff concerns impairments after the date last insured and thus is irrelevant. *See* D. Mem. at 1-4. Defendant misconstrues the ALJ's decision and the issues raised by plaintiff.

Plaintiff filed applications for both DIB and SSI. AR at 99, 108. To receive DIB, a claimant must show he was disabled before the date last insured. *See Armstrong v. Comm'r*, 160 F.3d 587, 589 (9th Cir. 1998) (citing 42 U.S.C. § 423(c)). To receive SSI, a claimant must meet certain income requirements but does not have to show he was disabled within a certain insured period. *See* 20 C.F.R. § 416.202. Instead, "[g]enerally, in SSI cases, the claimant's onset date and application date will be the same" because a claimant is only entitled to SSI benefits from the date of his application. *Cuadras v. Astrue*, 2011 WL 6936182, at *8 n.7 (E.D. Cal. Dec. 30, 2011); *see Lopez v. Astrue*, 2010 WL 1328888, at *14 (E.D. Cal. Apr. 2, 2010) ("[B]ecause SSI payments are made beginning with the date of application, the onset date in an SSI case is ordinarily established as of the

5

date of filing, provided that the claimant was disabled on that date.") (citing Soc. Sec. Ruling ("SSR")[3] 83-20). However, there are cases where an onset date occurs after the application date and SSI benefits should be awarded from the later onset date. *See Cuadras*, 2011 WL 6936182, at *8 n.7.

Here, the ALJ correctly realized the medical evidence differed for the two periods at issue. *See* AR at 24, 28. Consequently, as recounted above, the ALJ cited different findings in his denial of the applications. Plaintiff does not raise issues concerning the ALJ's denial of his application for a period of disability and DIB. *See* P. Mem. at 2, 15-23. Instead, plaintiff's arguments concern only alleged limitations subsequent to the application date. Accordingly, this court only examines the denial of SSI benefits.

## B. The ALJ Erred at Step Two

Plaintiff argues the ALJ erred at step two. P. Mem. at 15-18. Specifically, plaintiff contends the ALJ failed to consider plaintiff's osteoarthritis and occipital neuralgia. *Id*.

At step two, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii).[4] "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence

---

[3] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

[4] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

6

establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id*. (citations omitted).

Here, the ALJ noted plaintiff suffered from a number of physical impairments since the application date, including vision issues, diabetes mellitus, lumbar strain, acromioclavicular arthritis, and chronic headaches, but there were findings of only mild symptoms and the March 2014 consultative examination found no physical limitations. AR at 28. The ALJ found that plaintiff started to experience left shoulder pain in June 2014 and imaging showed that he suffered from mild acromioclavicular osteoarthritis. *Id*. at 29. Although plaintiff had pain and limited range of motion, he denied weakness and flexion was within normal limits. *Id*. The ALJ found that plaintiff's shoulder pain and range of motion improved after he received a corticosteroid injection. *Id*. The ALJ also found suggestions of exaggeration. *Id.*. The ALJ additionally noted plaintiff was diagnosed with occipital neuralgia in August 2014, but the pain improved for four months after an occipital nerve block. *Id*. Despite these findings, the ALJ found at step two plaintiff had no severe physical impairments.[5] *Id*. at 28.

The mere diagnosis of an impairment does not establish that it was severe. *See Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999) ("Although the [claimant] clearly does suffer from diabetes, high blood pressure, and arthritis, there is no evidence to support his claim that those impairments are 'severe.'"); *see also Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir.1993) ("The mere existence of an impairment is insufficient proof of a disability."). But here, plaintiff was not merely diagnosed with impairments.

With regard to plaintiff's left shoulder pain, based on plaintiff's history,

---

[5] The ALJ did not receive all of the medical records concerning the shoulder pain until after the hearing. *See* AR at 76. Consequently, the medical expert – who in any event was a psychiatrist, and stated he was "not commenting on" physical limitations (*see id.* at 47, 50) – did not review those records.

7

examinations, and imaging, physicians diagnosed plaintiff with acromiovacular and glenohumeral osteoarthritis. AR at 1048, 1234. Upon examination, plaintiff exhibited pain and decreased range of motion. *See, e.g., id*. at 1106, 1122, 1129. Physicians treated the left shoulder pain with corticosteroid injections, which only provided three days of relief. *See id*. at 1105, 1228, 1234.

As for plaintiff's headaches, physicians diagnosed plaintiff with chronic headaches in October 2013. *Id*. at 631. Plaintiff continued to complain of headaches that would last three to four hours a day on a daily or every other day basis. *See, e.g., id*. at 659, 1122, 1129, 1168, 1380. Plaintiff received an occipital nerve block in August 2014, which resulted in a 75% improvement in pain, tension, and headaches. *Id*. at 1120-21. The improvement, however, was temporary and plaintiff required another occipital nerve block in June 2015. *Id*. at 1379.

There was substantial evidence that plaintiff's left shoulder condition – whether it was glenohumeral and/or acromiovacular osteoarthritis – and his occipital neuralgia had more than a minimal effect on his ability to work and were sufficient to pass the de minimis threshold of step two. Therefore, the ALJ erred at step two. The ALJ's step two error may be harmless if the ALJ properly considered the impairments in his RFC determination. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (the failure to address an impairment at step two is harmless if the RFC discussed it in step four). As discussed below, however, the ALJ here did not properly consider the impairments in his RFC determination.

**C.**     **The RFC Determination Was Not Supported by Substantial Evidence**

Plaintiff contends the RFC determination was not supported by substantial evidence because it failed to incorporate any physical limitations and failed to account for his moderate limitations in concentration, persistence, and pace. P. Mem. at 18-22.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.* Here, the ALJ determined plaintiff had the physical RFC to perform a full range of work at all exertional levels and only had non-exertional limitations. AR at 31. The ALJ limited plaintiff to simple, routine tasks; frequent contact with supervisors, coworkers, and the public; and simple work related decisions. *Id.*

### 1. **Physical Impairments**

The ALJ was obligated to consider plaintiff's shoulder pain and occipital neuralgia, as well as other physical impairments, in assessing plaintiff's RFC, notwithstanding the ALJ's failure to find them to be severe impairments. *See* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). In his RFC discussion, however, the ALJ made only scant mention of plaintiff's physical impairments. *See* AR at 31-34.

The only specific physical impairment considered was plaintiff's vision problem, which the ALJ determined could be addressed with spectacles. *Id.* at 33-34. Otherwise, the ALJ relied on the March 2014 consultative examination in which Dr. Celeste Emont found plaintiff has no physical functional limitations. *Id.* at 34; *see id.* at 735. But as discussed above, and as the ALJ recognized, plaintiff only began experiencing shoulder pain in June 2014, and was not diagnosed with occipital neuralgia until August 2014. *Id.* at 29, 1177, 1358. These diagnoses and the treatments for them discussed above all occurred after Dr. Emont's examination of plaintiff, and therefore could not have been considered by her. As such, the ALJ's complete reliance on Dr. Emont's opinion to support a finding of no physical limitations in plaintiff's RFC reflects a complete failure by the ALJ to consider plaintiff's shoulder pain and occipital neuralgia in determining plaintiff's

RFC. This was error.

2. **<u>Concentration, Persistence, and Pace</u>**

At step three, the ALJ concluded plaintiff had moderate difficulties with regard to concentration, persistence, or pace. *Id*. at 30. The ALJ appeared to reach this conclusion based on plaintiff's reports of difficulty keeping up with the pace of work in prior work and issues with following instructions. *See id*. Plaintiff contends the ALJ's limitation of plaintiff to simple, routine tasks did not adequately account for plaintiff's moderate limitations in concentration, persistence, and pace. P. Mem. at 20-22.

Two Ninth Circuit cases provide guidance on this issue. In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008), the Ninth Circuit held that an ALJ's RFC limitation to simple, routine, repetitive work adequately captured the claimant's deficiencies in pace because a physician opined plaintiff had a slow pace, both in thinking and action, but was able to carry out simple tasks. In other words, an "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id*. at 1174. By contrast, in an unpublished decision one year later, *Brink v. Comm'r*, 343 Fed. Appx. 211, 212 (9th Cir. 2009), the Ninth Circuit held that the phrase "simple, repetitive work" did not encompass plaintiff's difficulties with concentration, persistence or pace, noting that the ALJ there failed to equate the two. This was clear from the ALJ's hypotheticals in that case – he posed one referencing only the simple, repetitive work limitation and another incorporating the additional limitation of moderate to marked attention and concentration deficits. *Id*. The court found *Stubbs-Danielson* distinguishable, as in *Stubbs-Danielson* the medical testimony did not establish any limitation in concentration, persistence, or pace, whereas in *Brink* the ALJ accepted that the claimant had difficulties with concentration, persistence, or

pace. *Id.*

This case is more like *Brink*. The ALJ found plaintiff had moderate difficulties with concentration, persistence, or pace, but did not include any such limitation in the RFC. *See* AR at 30-31. Instead, the ALJ only included restrictions to simple, routine tasks and simple work-related decisions. *See id*. at 31. There is nothing in the record to suggest these restrictions encompass the limitations with concentration, persistence, and pace. The court finds *Brink's* reasoning is persuasive. Thus, under *Brink*, the ALJ erred because he did not equate simple, routine tasks and simple work-related decisions with concentration, persistence, and pace limitations.

Plaintiff further argues that as a consequence of the ALJ's failure to find plaintiff's occipital neuralgia severe at step two and consider it in his RFC determination, as discussed above, the ALJ also failed to add a further limitation of low stress. *See* P. Mem. at 22. Plaintiff contends his physicians concluded stress was a precipitating factor to his headaches. *See id*. On remand, the ALJ must also consider the physician's findings about stress.

In sum, the ALJ's RFC determination was not supported by substantial evidence.

**D.** **The ALJ's Step Five Determination Was Not Supported by Substantial Evidence**

Plaintiff contends the ALJ's step five determination was not supported by substantial evidence because it relied upon an erroneous RFC assessment. P. Mem. at 22-23. The court agrees.

Indeed, because as discussed above the RFC did not sufficiently account for plaintiff's physical impairments and difficulties with concentration, persistence, and pace, the hypothetical posed to the vocational expert was incomplete. *See* AR at 90-91. "'If a vocational expert's hypothetical does not reflect all the claimant's

limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews*, 10 F.3d at 681 (internal quotation marks and citation omitted); *see Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (same and citing additional authority)). The ALJ based his step five finding on the vocational expert's testimony. AR at 35. Consequently, in reaching an incomplete RFC determination, posing an incomplete hypothetical to the vocational expert, and then relying on the vocational expert's testimony, the ALJ erred at step five.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for

further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

Here, remand is warranted because the ALJ erred at step two and failed to properly consider all of plaintiff's impairments and limitations in his RFC determination. Remand is necessary to allow a reassessment of plaintiff's RFC. The court cannot say on this record whether the ALJ would be required to find plaintiff disabled. On remand, the ALJ shall further develop the record if necessary, revisit step two to determine which impairments are severe, reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: March 26, 2019

_____
SHERI PYM
United States Magistrate Judge